IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF GEORGIA

ATLANTA DIVISION

UNITED STATES OF AMERICA,　　:

v.　　　　　　　　　　　　　　　:　　CRIMINAL CASE NO.

DWAYNE PETERSON DAVIS,　　:　　1:24-CR-257-JPB-JSA

　　　　Defendant.　　　　　:

## ORDER

Defendant is charged in a 16-count Indictment with wire fraud and money laundering in connection with an alleged investment fraud scheme. The matter is before the Court on Defendant's Motion for Bill of Particulars [13] and Motion for Discovery and for Early Production [14]. As explained below, Defendant's Motion for Bill of Particulars [13] is **GRANTED IN PART, DENIED IN PART**, and Defendant's Motion for Discovery [14] is **DENIED**.

## I.　　THE INDICTMENT

Defendant was the minority owner, alongside the Government Employees' Insurance Corporation ("GEICO") as majority owner, of an entity known as PIS QOZ Fund 2018-A, LP (the "Partnership"). Indictment [1] ¶ 2. In 2018, GEICO contributed $26 million to the Partnership to fund construction costs for a real

estate development in South Carolina. *Id*. ¶ 3. In 2021, GEICO agreed to contribute another $5.91 million to the Partnership to pay taxes, settle a construction lawsuit, and stop foreclosure proceedings. *Id*. ¶ 4. The Indictment alleges that Defendant caused GEICO to wire the $5.91 million payment to an account controlled by the Defendant, with the representation that he would use it solely for the Partnership-related purposes outlined above. *Id*. ¶¶ 5-6. Defendant also promised that he would confer with GEICO before making any payments and that he would not disburse payments except to the "final source." *Id*. ¶ 7.

In sum, the Indictment alleges that Defendant siphoned off the majority of the $5.91 million contributed by GEICO in 2021, to other accounts that he controlled, not for the benefit of the Partnership. The Indictment also alleges that Defendant continued to lie to GEICO as to what he had done with the money, whether there remained sufficient money to pay all remaining necessary expenses, why Defendant had not provided documentary proof of his transactions as he promised he would, why certain expenses had not been paid as promised, and other material matters. *Id*. ¶¶ 8-19.

The Indictment alleges that the Defendant engaged in various wire-based transactions and communications in furtherance of this scheme to defraud. The Indictment also alleges that the Defendant engaged in monetary transactions with the proceeds of this alleged fraud scheme that constituted specific instances of

money laundering. The Indictment alleges that all of these offenses occurred in the

"Northern District of Georgia and elsewhere." The Indictment further alleges that

each of the offenses committed by Defendant were "aided and abetted by others

known and unknown to the Grand Jury." Indictment [1] ¶¶ 20, 23.

## II.    MOTION FOR BILL OF PARTICULARS

Rule 7(f), Fed.R.Crim.P., allows the Court to direct the Government to

provide a bill of particulars to supplement an indictment, where necessary to advise

the Defendant of the charges against him or her. The purpose of a true bill of

particulars is threefold: "to inform the defendant of the charge against him with

sufficient precision to allow him to prepare his defense, to minimize surprise at

trial, and to enable him to plead double jeopardy in the event of a later prosecution

for the same offense." *United States v. Cole*, 755 F.2d 748, 760 (11th Cir. 1985)

(citations omitted). A bill of particulars, properly viewed, supplements an

indictment by providing the defendant with information necessary for trial

preparation even if not required to be included in the indictment itself. *United*

*States v. Anderson*, 799 F.2d 1438, 1441 (11th Cir. 1986) (italics omitted).

Generalized discovery, however, is not an appropriate function of a bill of

particulars and is not a proper purpose in seeking the bill. *Id*., at 1442; *United*

*States v. Colson*, 662 F.2d 1389, 1391 (11th Cir. 1981).  Similarly, the Eleventh

Circuit has held that a bill of particulars should not "automatically [be] accorded

the status of a supplement to an indictment." *United States v. Anderson*, 799 F.2d 1438, 1442 (11th Cir. 1986). Furthermore, a defendant is not entitled to a bill of particulars "with respect to information which is already available through other sources," including discovery. *United States v. Martell*, 906 F.2d 555, 558 (11th Cir. 1990); *United States v. Rosenthal*, 793 F.2d 1214, 1227 (11th Cir.), modified on other grounds, 801 F.2d 378 (11th Cir. 1986).

Importantly, "[t]he defendant's constitutional right is to know the offense with which he is charged, not to know the details of how it will be proved." *United States v. Kendall*, 665 F.2d 126, 135 (9th Cir. 1981). Thus, the Government need not "explain the legal theories upon which it intends to rely at trial." *United States v. Burgin*, 621 F.2d 1352, 1359 (5th Cir. 1980). Nor is a bill of particulars available to learn details as to the Government's evidence supporting a charge. That evidentiary information is "detail to which [the Defendant] is not entitled in a bill of particulars . . . ." *United States v. Chaidez-Ontiveros*, No. 1:11–CR–0264–AT–JFK, 2011 WL 7574634, *2 (N.D. Ga. October 25, 2011). After all,

> [T]here is a difference between being surprised by the charge and being surprised by the evidence supporting a charge. The function of the bill of particulars is to reduce surprise at the charge, that is, to enable the defendant to identify what he is alleged to have done in violation of law. It is not to eliminate surprise with respect to evidence offered in support of a charge that is clearly understood by the defendant.

*United States v. Scrushy*, No. CR-03-BE-530-S, 2004 WL 483264, at *9 n. 5

(N.D.Ala. March 3, 2004).

Defendant's first request is for the Government to file a bill of particulars

explaining the facts by which it will prove venue for the offenses in this District.

As noted above, the Indictment alleges the bare conclusion that each of the

offenses occurred "in the Northern District of Georgia and elsewhere." Defendant

demands disclosure of facts supporting this conclusion by way of a bill of

particulars.

Second, Defendant requests that the Government identify by way of a bill of

particulars any other individuals who are considered to have aided and abetted

Defendant's violations as alleged in the Indictment. As noted above, the Indictment

makes the conclusory and somewhat boilerplate statement that other individuals

"known and unknown to the Grand Jury" aided and abetted each of Defendant's

offenses, although the Indictment fails to identify any such other individuals.

As for the facts supporting venue in this District, the Court **DENIES** any

request for a bill of particulars. The Indictment clearly alleges the conclusory but

necessary statement that the offenses here took place at least in part in the Northern

District of Georgia. The Defendant is thus on notice of the nature of the offenses

that he is charged with committing. *C.f. United States v. Yonn,* 702 F.2d 1341, 1348

(11th Cir. 1983) ("[T]he allegation that the criminal activity took place 'in the

Northern District of Florida and elsewhere'" was sufficiently specific). The request

for added factual detail as to how the Government would prove this allegation is a

clear attempt to learn the evidentiary details of the Government's case, which as

explained above is not the purpose of a bill of particulars.

The request for identification of known aiders and abettors, on the other

hand, is **GRANTED**. This information goes beyond mere evidentiary detail but

rather goes more directly to explain to the Defendant what acts he is being held to

account for. The Defendant is charged, under 18 U.S.C. § 2, with having

committed crimes not just through his own individual conduct but also through the

actions of others who aided and abetted his crimes (and thus who could also be

guilty under 18 U.S.C. § 2). The Defendant cannot effectively prepare for trial,

unless he is informed as to whose other criminal conduct he will be held to account

for. For this and other reasons, the Court's standard pre-trial scheduling order

requires in every case that all known co-conspirators be identified, regardless of

whether a conspiracy charge is included in the Indictment.  [9] at IV.J.

In this case, curiously, while the Indictment alleges that each one of the 16

fraud and money laundering offenses were "aided and abetted by others known and

unknown to the Grand Jury," the Government now states that, "[a]t this time,

however, the Government does not know of anyone who aided and abetted Davis

in his commission of the charged offense." [18] at 10. The Court finds these two

seemingly different statements to be confusing. In any event, the vague qualifier

"at this time" seems to keep open the possibility that Defendant may be held to

account for criminal conduct committed by other persons under an aiding and

abetting theory, who may be identified at some unknown point in the future. The

Defendant is entitled to more definitive and clear notice than that.

Thus, while this may be moot, the Court **ORDERS** the Government to

disclose to Defendant within **FOURTEEN DAYS OF TODAY**, by way of a bill of

particulars or other disclosure, the names of all individuals who the Government

will take the position at trial constituted known aiders and abettors under the

standards of 18 U.S.C. § 2.

### III.    MOTION FOR DISCOVERY

According to Defendant's Motion for Discovery [14], the Partnership is part

of a long-standing investment relationship between GEICO and Defendant.

Defendant argues that GEICO reneged on contractual obligations vis-à-vis the

Partnership and now seeks to gain advantage in what he characterizes as a

fundamentally civil dispute by reporting these events to the Government as wire

fraud. Because the allegations in the Indictment endorse the view that Defendant

criminally defrauded GEICO, instead of having been the victim himself of

GEICO's contractual breaches, Defendant concludes that "the government has

essentially adopted GEICO's version of events with no real investigation."  [14] at

4. Defendant also concludes that "the government apparently did not interview a single witness regarding GEICO's allegations before seeking an Indictment." *Id*.

Defendant proffers that a lawyer representing GEICO sent an 11-page memorandum summarizing certain facts to the Government and provided "a subset of hand-selected emails and other documents …." *Id*. ¶ 3. Defendant's Motion asserts, however, that the Government has otherwise refused to disclose or detail its other communications with GEICO representatives during the investigation of this case. Defendant thus asks the Court to order the Government to disclose all of its communications with GEICO lawyers and other agents relating to this case, before and after the Indictment.

Fed.R.Civ.P. 16(a)(1)(E) provides that:

the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and:

(i) the item is material to preparing the defense;

(ii) the government intends to use the item in its case-in-chief at trial; or

(iii) the item was obtained from or belongs to the defendant.

More fundamentally, the Government has a continuing duty to honor a Defendant's constitutional rights, and thus must disclose any information in its possession or control that is exculpatory. *Brady v. Maryland*, 373 U.S. 83, 87-88

(1963); *Giglio v. United States*, 405 U.S. 150, 154 (1972). In this regard, the prosecutor must disclose evidence that would, in the eyes of a neutral and objective observer, give rise to the reasonable probability of a result favorable to the Defendant. *United States v. Jordan*, 316 F.3d 1215, 1252 (11ᵗʰ Cir. 2003). *Giglio* holds that "[w]hen the reliability of a given witness may well be determinative of guilt or innocence, nondisclosure of evidence affecting credibility falls within this general rule." 405 U.S. at 154. Finally, the so-called *Jencks* Act, 18 U.S.C. § 3500, requires the Government to disclose any witness statements in its possession previously made by any Government trial witness, although such disclosure is not statutorily-mandated until after the witness's direct examination.

According to the Defendant, he is entitled under Rule 16 and/or *Brady* to review *all* of the Government's non-evidentiary communications with any non-testifying lawyer or other representative of GEICO related to this case. Defendant essentially argues that all of these communications are at least "material" to his defense, if not also exculpatory and/or impeaching to other potential witnesses, to the extent they more generally show that the Government received and accepted a version of events from GEICO lawyers that Defendant disagrees with. The Court cannot ascribe to this sweeping theory of discovery.

Whether an item of information is discoverable as being "material to the defense" under Rule 16(a)(1)(E), or exculpatory under *Brady*, requires more than

just speculation and conclusory assertions. *See Jordan*, 316 F.3d at 1250 (the

materiality standard requires "'some indication that the pretrial disclosure of the

item would … enable the defendant significantly to alter the quantum of proof in

his favor.'") (*quoting United States v. Buckley*, 586 F.2d 498, 506 (5th Cir.1978));

*United States v. Owden*, 345 F. App'x 448, 457 (11th Cir. 2009) ("A district court

may decline to order discovery 'based upon mere speculation as to whether the

material would contain exculpatory evidence because to do so would convert

*Brady* into a discovery device and impose an undue burden upon the district

court."). Defendant does not show that any undisclosed communications with

GEICO lawyers—which are not themselves evidence to be used against him and/or

statements by testifying witnesses[1]—are material here.

At the outset, it bears noting that Defendant has not been denied disclosure

of all communications between the Government and GEICO counsel. The

Government asserts, and Defendant does not dispute, that he has received the 11-

page summary memorandum from GEICO counsel, with exhibits, apparently

setting forth GEICO's investigation in this case. Defendant's motion for discovery

---

[1] Obviously, if any particular communications are to be used as evidence at
trial, or are statements by individuals who will testify at trial, they are or will be
subject to discovery under the *Jencks* Act or Rule 16(a)(1)(E)(2). This motion,
rather, relates to Defendant's demand for disclosure of communications with non-
witnesses that will not be introduced as documentary exhibits in the Government's
case.

is premised on the notion that he "has no way of knowing" how many other communications between GEICO lawyers and the Government occurred or what was said. [14] at 3-4. But, by definition, Defendant can offer nothing more than speculation as to whether there may be anything at all helpful in these unknown, non-evidentiary communications involving non-witnesses. More is necessary to compel disclosure under *Brady* or Rule 16.

Nor is there any basis to conclude that the communications sought would be attributable to or "impeaching" of any trial witness. GEICO, of course, is an artificial corporate entity and is not itself a witness in this case. Communications by GEICO lawyers are thus not all automatically discoverable as "prior statements" of the fact witnesses, who will presumably not include the lawyers, and who may have been personally unaware of and uninvolved with these communications. Nor would the contents of these communications necessarily contradict or impeach the testimony of trial witnesses.

Of course, there may be facts shared in any individual communication that contradict facts later recounted by a trial witness, or other circumstances that might trigger a potential obligation to disclose a particular communication. The Government is already obliged to continually assess the discoverability of all information in its files, under *Brady*, *Giglio*, and otherwise. This ongoing obligation includes assessment of facts communicated by GEICO lawyers and

other representatives. But Defendant has not shown, and the Court has no basis to

find on the current record, that these obligations require categorical, blanket

disclosure of all communications with GEICO regarding this case.

Defendant argues that disclosure of GEICO's communications may reveal

that GEICO failed to disclose its "broader relationship" with Defendant and may

clarify the "timing of the decision to go to law enforcement." [14] at 6-7.

Defendant fails to show the significance of these suppositions or that any

undisclosed communications (beyond the lengthy memorandum already disclosed)

would shed any additional light on these subjects. Indeed, Defendant himself is

already well aware and able to introduce proof of any "broader relationship" with

GEICO. *See United States v. Ross*, 511 F.2d 757, 763 (5th Cir. 1975) (the courts are

to consider "the defendant's own knowledge" in assessing the materiality of

information). As for the "timing" by which non-testifying GEICO lawyers may

have communicated with the Government, Defendant does not show how that

would have anything material to do with the facts testified to by actual fact

witnesses themselves.[2]

---

[2] Defendant's brief states that "For example, Seth Ingalls, alleged as a participant in the Count Eight telephone call, was the GEICO employee leading its business with Mr. Davis in 2018-A and the other partnerships. Mr. Ingalls was undoubtedly involved, if not the actual decision-maker, in Geico's decision to go to law enforcement. Among the other matters described above, the discovery sought here will reflect the timing of the decision…." [14] at 6-7. Putting aside the speculation in these assertions, nothing shows that the communications with non-testifying

Defendant also asserts that GEICO's communications might help "avoid surprise" and help him prepare for trial, speculating that GEICO provided "both roadmap and recipe for the Indictment obtained by the government and for its case based on discovery." [14] at 7. But, as noted above, the Defendant's right to avoid surprise relates to "know[ing] the the offense with which he is charged, not to know[ing] the details of how it will be proved." *Kendall*, 665 F.2d at 135. While the Defendant must be allowed access to all evidence to be introduced against him, and other categories of discovery, nothing entitles him to a "roadmap" or "recipe" explaining how the Government will use that evidence to prove its case. In any event, Defendant has already been provided GEICO's 11-page investigative summary memorandum and exhibits. Yet again, Defendant only speculates that there is some additional "roadmap" communication beyond that memorandum that may significantly alter the result in his favor. For all of these reasons, the Motion [14] is **DENIED**.[3]

---

lawyers or other agents would necessarily be material. Of course, if Ingalls is a fact witness and was involved in prior written communications, the Government may have to produce that material under the *Jencks* Act or otherwise. If facts relayed by others contradict facts that Ingalls or other witnesses testify to, then the Government may have to disclose those communications under *Brady*. But there is no basis to show that the mere fact of communications by other employees, that Ingalls may have been uninvolved in, would significantly alter the quantum of evidence or have any significant probative value here.

[3] The Government also argues that the demanded disclosure should be denied for the additional reason that "reports, memoranda, or other internal documents made by an attorney for the government or other government agent in connection with

IV.    **CONCLUSION**

Thus, Defendant's Motion For Bill Of Particulars is **DENIED IN PART, GRANTED IN PART**. The Government must disclose, by bill of particulars or otherwise, all known individuals that it will take the position at trial acted as aiders and abettors under 18 U.S.C. § 2, within **FOURTEEN (14) DAYS** of this Order. The Court **DENIES** the Motion for Bill of Particulars [13] in all other respects.

The Court **FINDS** that the ends of justice in providing the Government limited additional time to disclose all known aiders and abettors outweighs the Defendant's and the public's right to a speedy trial, as the time is necessary to allow the Defendant to obtain information necessary to prepare for trial. The Court thus **DIRECTS** that this Fourteen (14) Day period following this Order be excluded from all Speedy Trial Act calculations.

The Court **DENIES** Defendant's Motion for Discovery and Early Production [14].

---

investigating or prosecuting a case" are not subject to disclosure under Fed.R.Crim.P. 16(a)(2). The Court does not rely on this argument in denying Defendant's motion. First, Defendant demands all communications with GEICO representatives, which would seem to go beyond just internal investigative memoranda. Second, the discovery exclusion of Rule 16(a)(2) relates only to the Government's discovery obligations under Rule 16. The facts memorialized within agent reports or other internal Government documents, or even the documents themselves in some cases, may very well be subject to disclosure on other grounds such as to fulfill the Government's obligations under *Brady*, *Giglio* or the *Jencks* Act. Thus, the Court declines to rest any part of this decision on the language in Rule 16(a)(2).

As there is nothing else pending before the undersigned, this matter is

**READY FOR TRIAL**.

  **IT IS HEREBY ORDERED** this 24th day of March, 2025.


             *Justin S. Anand*
             JUSTIN S. ANAND
             U.S. MAGISTRATE JUDGE