IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Criminal Action No. |
| v. | ) | 1:24-CR-257-JPB-JSA |
| | ) | |
| DWAYNE PETERSON DAVIS | ) | |

### DEFENDANT'S OBJECTIONS TO MAGISTRATE JUDGE'S ORDER DENYING IN PART MOTION FOR BILL OF PARTICULARS AND DENYING MOTION FOR DISCOVERY AND EARLY PRODUCTION

Defendant Dwayne Peterson Davis, through counsel, hereby objects to the Magistrate Judge's Order denying in part his Motion for a Bill of Particulars and denying his Motion for Discovery and Early Production. (Doc. 24).[1] This Court should reject the Order's denial of a bill of particulars regarding venue and Defendant's motion for the production of communications from GEICO, the alleged victim, to the Government, including communications within the period covered by the Indictment.[2]

---

[1] Counsel attempted to e-file these objections on Pacer on April 7, 2025, 14 days after service of the Order. However, because counsel selected an incorrect activity code, Pacer would not accept the filing. After emailing the Magistrate Judge's deputy clerk and receiving a response on April 9, 2025, counsel now files these objections.

[2] Defendant does not object to the portion of the Order granting his Motion for Bill of Particulars regarding the aiding and abetting allegations in the Indictment (Doc. 24 at 6-7).

1

**RELEVANT BACKGROUND AND FACTUAL SUMMARY**

**I.     Motion for Bill of Particulars Regarding Venue.**

Defendant moves for a bill of particulars regarding the Indictment's vague and generalized venue allegations. (Doc. 13). With one exception, the conclusory and general allegation that the charged offenses occurred "in the Northern District of Georgia and elsewhere in the United States" is the only location allegation in the Indictment. (Doc. 1 at ¶¶20, 23). The sole exception is the allegation that the real estate development underlying the alleged partnership between GEICO and Defendant was located in South Carolina, which cannot support venue in this district. (*Id.* at ¶3). The Indictment is otherwise utterly silent as to where anything occurred, much less that anything occurred in the Northern District of Georgia. *See* (*Id.*). Paragraph 1 of the Indictment, the paragraphs alleged as "Background," and the "Manner and Means" allegations are bereft of any specific allegation regarding the purported location of anything, anyone, any entity, or any conduct, other than the sole reference to South Carolina. (*Id.* at ¶¶1-19). Nor does the table alleging the execution of the alleged wire fraud scheme allege any specific location information, much less any location in the Northern District of Georgia, for each wire fraud count. (*Id.* at ¶20).

The Indictment alleges venue in a similar fashion for the six financial transactions alleged as money laundering counts, albeit alleging originating and

2

receiving bank accounts (at one bank with over 300 locations in the Southeast and another primarily located in South Carolina) for two of the individual money laundering counts. (*Id.* at ¶23). The other four transactions allege only an account at a bank primarily located in South Carolina. (*Id.*). The Indictment alleges that the requisite specified unlawful activity is "the wire fraud scheme charged in Counts 1 through 10" of the Indictment. (*Id.*). However, as described above, other than one allegation regarding South Carolina, the Indictment is silent as to the locus of any conduct, entity, or individual alleged in the purported wire fraud scheme.

Discovery does not provide the missing information that Defendant seeks here, which the government has essentially conceded by failing to specifically address Defendant's examples in its response to Defendant's Motion. *See* (Doc. 13 at 7-8); (Doc. 18 at 8). While the government has produced account statements and wiring information from various accounts allegedly relevant to the charged wires and financial transactions, those documents do not show how the government intends to prove that each of the charged wirings began, transited, or ended in the Northern District of Georgia.[3] For example, for the financial transaction alleged in Count One, the government produced a wire advice provided by GEICO reflecting several locations, none of which are in the Northern District of Georgia (even assuming

---

[3] The Government also concedes that wire fraud venue requires proof of a wiring that began, ended, or passed through the Northern District of Georgia. (Doc. 18 at 3).

*arguendo* and solely for purposes of this motion that a wire advice is sufficient evidence of venue). Discovery contains other wire advices for charged transactions that do not reflect a wiring to, from, or through the Northern District of Georgia. For certain counts, discovery on the charged wire consists of an account statement from banks and financial institutions with locations in many districts. An account statement does not reflect where a specific wiring began, passed through, or ended. Regarding the telephone calls, the government has not produced toll or account records for any of the phone calls alleged in Counts Eight through Ten. In its response to Defendant's Motion for a Bill of Particulars, which set forth these examples, the government did not address any of these examples or point to any discovery providing the requested information. *See* (Doc. 18 at 8).

The Order incorrectly concluded that the Indictment's venue allegations are sufficient to inform Defendant of the nature of the offenses that he is charged with and that Defendant's request is evidentiary in nature. (Doc. 24 at 5-6). The Order cites a single case in support of this conclusion, *United States v. Yonn*, 702 F.2d. 1341, 1348 (11th Cir. 1983), without addressing, much less distinguishing the numerous cases cited by Defendant in which courts ordered bills of particular regarding vague and generalized venue allegations such as those here. (Doc. 24 at 5-6); (Doc. 13 at 8-9).

4

## II.     Motion for Discovery and Early Production.

Defendant moves for an order compelling the government to produce communications between the government and GEICO, the alleged victim and whose accusations the government has adopted with little independent investigation. Such communications should be produced to Defendant under *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150 (1972), their progeny, and Federal Rule of Criminal Procedure 16(a)(1)(E).

Since approximately 2012 and continuing even to the present day (notwithstanding the Indictment here), GEICO and Defendant have been and currently are partners together in multiple partnerships formed for the sole purpose of generating substantial tax benefits in excess of $200 million for GEICO from investments in various tax advantaged transactions (such as conservation easements and opportunity zone investments). GEICO's role in these partnerships was simple: GEICO contributed and was supposed to contribute tens of millions of dollars to each partnership to generate tax benefits for itself that far exceeded the capital it contributed and was supposed to contribute. Defendant's role also was simple: in return for fees and a share of the upside, he managed the operation of the partnerships, which included, among other things, managing the underlying real estate developments and paying the partnership's bills (such as property taxes). Over the course of their relationship, GEICO invested over a hundred million

dollars with Defendant for the purpose of obtaining tax advantages exceeding $200 million.

But even though it reaped significant tax benefits from its relationship with Defendant, in approximately 2019, GEICO began failing to live up to its partnership obligations, most significantly its obligations to fund the operations of these partnerships. The partnership alleged in the Indictment, PIZ QOZ Fund 2018-A ("2018-A"), was the last or among the last of the partnerships formed between GEICO and Defendant. GEICO's failure to meet its partnership obligations in 2018-A included reneging on an additional, required $11 million capital contribution.  By the summer of 2021, GEICO's failure to meet its partnership obligations in 2018-A and other partnerships had damaged Defendant to the tune of more than $10 million.

The government's investigation of this case appears to have begun at least by August 30, 2021, when a lawyer representing GEICO sent an 11-page memorandum addressed to "United States Department of Justice."  This memorandum is entitled "Dwayne 'Pete' Davis Wire Fraud Investigation" and was sent to someone as yet unidentified within the government.  At some point, GEICO produced to the government a subset of hand-selected emails and other documents from the five month period alleged in the Indictment (April to August 2021).

During the three-year period between GEICO's memorandum and the return of the Indictment, at least one lawyer for GEICO, and perhaps others, communicated on multiple occasions with the assigned Assistant U.S. Attorney in this district, the case agent, both, or even others in the government. The government has refused to produce to Defendant any record of GEICO's communications with it, despite his written and oral requests for those records under Rule 16, *Brady*, *Giglio*, *Kyles* and their progeny.

It appears that the government has essentially adopted GEICO's version of events with no real investigation. Other than the hand-selected materials from GEICO, based on discovery the whole of the government's investigation here appears to consist essentially of obtaining records from three banks, from J.A. who is alleged in connection with one money laundering count, from the Georgia Secretary of State regarding three entities, and from a third party unrelated to the allegations in the Indictment. Other than Defendant, in the three years after GEICO's August 2021 memorandum, the government apparently did not interview a single witness regarding GEICO's allegations before seeking an Indictment.

The Magistrate Judge incorrectly denied Defendant's motion, characterizing the requested communications as "non-evidentiary" and "not themselves evidence to be used against him and/or statements by testifying witnesses." (Doc. 24 at 9, 10). Having mischaracterized the requested communications in this way, the Order

also incorrectly concludes that Defendant offers only speculation and conjecture as to the materiality of these communications to his defense, thereby placing them outside of the government's disclosure obligations. (*Id.* at 10-13).

## ARGUMENT AND AUTHORITY

### I.   Motion for Bill of Particulars.

Defendant respectfully objects to the denial of his Motion in part and the Order's conclusion that the Indictment's venue allegations are sufficient for him to adequately prepare for trial. The purported venue allegations in the Indictment are too vague and lacking for Defendant to prepare to defend whether venue has been properly laid in the Northern District of Georgia for the offenses charged in the Indictment. The Court should order the Government to file a bill of particulars setting out the alleged facts that it intends to prove to establish venue for each count. Even under the bare-bones pleading standards applicable to federal Indictments, the Indictment here does not provide enough information to evaluate and prepare to contest whether the wire fraud charges allege wirings that began, passed through, or ended in the Northern District of Georgia. Similarly, the Indictment does not allege enough to evaluate and contest whether venue is properly laid under § 1956(i)(1)(A) or (B) for the money laundering charges, because the Indictment is too vague to determine whether venue is laid based on an allegation that financial transactions

were conducted in this district or based on the allegation that the specified unlawful activity occurred in this district.

"A bill of particulars, properly viewed, supplements an indictment by providing the defendant with information necessary for trial preparation." *United States v. Anderson*, 799 F.2d 1438, 1441 (11th Cir. 1986) (emphasis omitted). "A request for bill of particulars is, *inter alia*, befitting in those instances where defendant seeks further clarity and precision with regard to the charges that he is facing in order to adequately prepare a defense." *United States v. Hassoun*, 477 F. Supp. 2d 1210, 1227-28 (S.D. Fla. 2007) (citing *Warren*, 772 F.2d at 837).

While the Indictment alleges in conclusory fashion that the wirings and financial transactions occurred "in the Northern District of Georgia and elsewhere in the United States," this applied-to-the-whole bald allegation is too general and vague to prepare to defend whether venue is properly laid as to each individual wire fraud and money laundering count. The partnership between GEICO and Defendant alleged in the Indictment, PIS QOZ Fund 2018-A LP, was formed for GEICO to invest approximately $26 million in a tax advantaged opportunity zone development in North Augusta, South Carolina, which obviously is not in the Northern District of Georgia.  Other than this one allegation regarding South Carolina, the Indictment does not allege any specific location information for anything.  For example, in alleging the wire fraud counts, the Indictment baldly alleges the wire transfer of

money from one entity to another, with no specificity about any fact to support venue, such as the location where a wire began, passed through, or ended. Similarly, the Indictment is silent as to any location relevant to the telephone calls alleged as Counts Eight through Ten – i.e., it alleges no facts regarding any location where such calls originated, passed through, or ended. And the money laundering charges, at least those that allege a bank, allege banks with multiple locations in multiple districts or principally located in another district.

The Order relies on a single case in concluding that the bald venue allegation is sufficient, *United States v. Yonn*, 702 F.2d. 1341, 1348 (11th Cir. 1983). But *Yonn* did not address the issue that Defendant raises here. The *Yonn* defendant attacked the sufficiency of the charge against him as a whole, arguing post-trial that the count for which he was convicted was too vague to satisfy his Sixth Amendment right to be informed of the charge against him. *Id.* at 1347-48. In rejecting this challenge, the Eleventh Circuit noted various allegations in the indictment, including the allegation, among others, that the conspiracy occurred "in the Northern District of Florida and elsewhere." *Id.* at 1348. Thus, the *Yonn* defendant did not raise, and the Court did not decide, the specific issue raised here – whether a general allegation of venue like that is sufficient to adequately prepare to contest venue at trial where the requested venue information is not available in discovery. Nothing in *Yonn* suggests that venue was even an issue there or whether discovery supplied sufficient information regarding

10

venue, which may be why the defendant there did not raise an issue like Defendant here. And *Yonn* was decided after a trial, such that whether Defendant could adequately prepare to contest venue was not at issue. Simply put, *Yonn* is inapposite to the issue raised by Defendant's Motion.

In contrast, the Order does not address multiple cases cited by Defendant in which courts ordered a bill of particulars regarding venue. *See* (Doc. 13 at 8-9). In *United States v. Jones*, No. 7:16-CR-30026, 2017 WL 1169754, *3 (W.D. Va. Mar. 27, 2017), the indictment, like this one, alleged only that certain counts occurred "in the Western District of Virginia, Eastern District of Virginia and elsewhere." As here, the defendant sought "information relevant to determining whether an objection to venue [was] warranted." *Id.* at *2 (noting that the defendant risked waiver of any venue objection if not raised before trial). Because the indictment did not allege "[s]pecific information as to the location of physical acts that link the defendant" to the underlying crime, the Court ordered the government to file a bill of particulars "detailing the evidence that supports venue in the" forum district. *Id.* at *3. Similarly, in *United States v. Mackey*, No. 21-CR-80 (NGG), 2022 WL 2093012, at *3 (E.D.N.Y. May 13, 2022), the court ordered the government to file a bill of particulars "stating, and clarifying, the facts that the government intends to establish venue at trial." *See also United States v. Stickle*, 355 F. Supp. 2d 1317, 1320, n.1 (S.D. Fla. 2004), *aff'd*, 454 F.3d 1265 (11th Cir. 2006) (ordering "the Government to

provide supplemental notice to the Defendants if it intends to rely on any additional facts and circumstances to establish venue" in the forum district).

"[V]enue is an essential element of the government's proof at trial." *United States v. Snipes*, 611 F.3d 855, 865 (11th Cir. 2010). "'[T]he Constitution, the Sixth Amendment, and Rule 18 of the Federal Rules of Criminal Procedure guarantee defendants the right to be tried in the district in which the crime was committed.'" *Id.* at 866 (quoting *United States v. Breitweiser*, 357 F.3d 1249, 1253 (11th Cir. 2004)). Defendant does not have sufficient information to prepare to contest the Government's vague and generalized venue allegation.  This Court should reject the Order's denial of Defendant's motion for bill of particulars and, like these other courts, order a bill of particulars on the venue allegations in the Indictment.

## II.     Motion for Discovery and Early Production.

Defendant seeks communications to the government by the alleged victim in this case, including communications that fall within the period covered by the Indictment.  Defendant respectfully objects to the Order's denial of his Motion for Discovery and Early Production and the conclusions that the materials sought are not material to his defense and are "non-evidentiary" in nature.  (Doc. 24 at 9-13). The Order incorrectly reaches these conclusions without any representation from the government regarding the substance of the requested communications, which it apparently has not even reviewed.

The Order's reasoning is circular – i.e., because Defendant has not yet seen the requested discovery, the Order concludes that his proffered reasons for the discovery are meritless. But that conclusion suffers from the same flaw. The government has nowhere described the nature of its communication with GEICO and its representatives. Defendant's need for the discovery, explained in his Motion and below, cannot be so readily dismissed. Defendant has explained his need for and the significance of the discovery, which should not be rejected just because Defendant has not yet obtained such discovery.

As Defendant asserted in his Motion, the requested communications are material to Defendant's defense because they undoubtedly reflect that GEICO involved law enforcement during the period alleged in the Indictment without informing the government about its own conduct in its partnerships with Defendant, including 2018-A. Specifically, the discovery sought here will show that GEICO did not disclose to or provide the government with any evidence of its broader relationship with Defendant, that it failed to live up to its partnership obligations to 2018-A and Defendant, and that it was seeking to get an advantage over its longtime partner, Defendant, by going to federal law enforcement. (Doc. 14). These are relevant to showing that GEICO was not defrauded.

The Order incorrectly concludes that Defendant has not shown how the timing of GEICO's communications with the government has anything material to do with

the facts testified to actual fact witnesses. (Doc. 24 at 12). Among the other matters described above, the discovery sought here will reflect the timing of the decision to go to federal law enforcement, which fell within the period alleged in the Indictment. When viewed in context, the dispute between GEICO and Defendant is a civil dispute between long-time business partners whose relationship GEICO had decided had run its course, even though that relationship had been tremendously rewarding to GEICO. GEICO's use of the federal law enforcement process and the timing of that to gain an advantage against Defendant is material and exculpatory evidence in this case and also is impeachment evidence for expected witnesses from GEICO.

Production of the requested discovery will give Defendant a more fulsome view of the alleged victim GEICO's conduct here, a view that is material to the defense of this case and the production of which is needed to avoid unnecessary surprise at trial. For example, Seth Ingalls, alleged as a participant in the Count Eight telephone call, was the GEICO employee leading its business with Defendant in 2018-A and the other partnerships. Mr. Ingalls was undoubtedly involved, if not the actual decision-maker, in GEICO's decision to go to law enforcement. In response to this example, the Order incorrectly concludes that there is no basis to show that communications by other GEICO representatives would alter the quantum of evidence or have significant probative value. (Doc. 24 at n.2). This is incorrect because Defendant's ability to put on evidence regarding, and cross-examine Ingalls

14

on GEICO's communications with the Government, and his involvement in such communications or even lack thereof (which also would be relevant), depends on the requested discovery.

Defendant does not seek a "roadmap" or "recipe," as the Order concludes. (Doc. 24 at 13). Defendant seeks production of evidence showing that the victim alleged in the Indictment gave the Government only partial facts, which the Government did not fully investigate and that lead to the Indictment here. That evidence is material to the defense and will significantly alter the quantum or proof at trial because it helps show that Geico was not defrauded as it and the government contend.

The disclosure of the discovery sought will neither burden nor prejudice the government. The government, which has not even represented that it has reviewed the requested materials, does not assert any burden as a reason to deny Defendant's motion. (Doc. 19). Production to Defendant should be a simple a matter of gathering and producing emails, any written correspondence, and any notes of government representatives documenting calls with GEICO's lawyers. In contrast, the failure to produce these materials to Defendant will impermissibly burden his constitutional rights. In short, no good reason appears to resist or deny the discovery sought here.

## CONCLUSION

For the foregoing reasons, the Court should reject the Order's denial of Defendant's Motion for a Bill of Particulars regarding venue and Defendant's Motion for Discovery and Early Production.

Respectfully submitted this 9th day of April 2025.

_____
Douglas W. Gilfillan
Georgia Bar No. 294713

Gilfillan Law LLC
One Atlantic Center
1201 West Peachtree Street, Suite 2300
Atlanta, Georgia 30309
Phone: (404) 795-5016
Email: doug@gilfillanlawllc.com

*Counsel for Dwayne Peterson Davis*

## LOCAL RULE 7.1D CERTIFICATE

The undersigned hereby certifies that the foregoing has been formatted in Times New Roman font, 14 point type, which complies with the font size and point requirements of Local Rule 5.1C.

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was electronically filed with the Clerk of Court using the CM/ECF system, which automatically serves notification of such filing to all counsel of record.

This 9th day of April, 2025.

*/s/ Douglas W. Gilfillan*
Douglas W. Gilfillan