IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>*v.*<br><br>DWAYNE PETERSON DAVIS | Criminal Action No.<br><br>1:24-CR-257-JPB-JSA |

**United States' Notice of Intent to Introduce Evidence as Intrinsic Evidence Or Under Federal Rule of Evidence 404(b)**

The United States of America, by Richard S. Moultrie, Jr., Acting United States Attorney for the Northern District of Georgia, and Samir Kaushal and Cathelynn Tio, Assistant United States Attorneys, respectfully files this notice of its intent to introduce evidence that is intrinsic to the charged offenses and that, in the alternative, is admissible under Federal Rule of Evidence 404(b).

The evidence that the United States seeks to introduce relates to defendant Dwayne Peterson Davis's criminal use of the funds he fraudulently obtained from Government Employees Insurance Company ("GEICO") to pay victim H.C. and purchase a 2021 Toyota Tundra from Jim Hudson Toyota.

## Background

### A. The Indictment

Davis allegedly fraudulently obtained approximately $5.91 million from a business partner, GEICO. (*See* Doc. 1 at 1–2, 4.) As part of a business deal, in April 2021, "GEICO agreed to contribute . . . $5.91

million" to a business venture, a limited partnership called PIS QOZ Fund 2018-A, LP ("PIS QOZ Fund"), with Davis. (*Id.* at 2.) The money was provided by GEICO to "pay taxes, settle a construction lawsuit, and stop foreclosure proceedings" on a property. (*Id.*) Davis directed GEICO to send the money to the PIS QOZ Fund bank account at UBS and fraudulently led GEICO to believe that the money would be used solely for PIS QOZ Fund. (*Id.*) In doing so, Davis promised that "he would confer with GEICO before disbursing any of the $5.91 million[.]" (*Id.*)

On or about April 27, 2021, GEICO wired the $5.91 million to the PIS QOZ Fund bank account "with the understanding that . . . Davis would use the money solely to pay debts and expenses of [PIS QOZ Fund]." (*Id.* at 3.) After GEICO transferred the money, Davis again promised that "he would not disburse any of the money until he had the 'appropriate documentation in place.'" (*Id.*)

But Davis's claims about the use of the funds were not true. (*Id.* at 2–3.) While Davis used some of the funds, approximately $2.07 million, for the agreed-upon purpose of making tax payments for PIS QOZ Fund (April 29 and 30, 2021), shortly after the funds were provided he quickly began "siphoning off" money to other accounts he controlled, for no legitimate business purpose related to PIS QOZ Fund. (*Id.* at 3–4.) Among other things, Davis used the remaining GEICO money to repay unrelated debts belonging to Davis and pay for a golf course membership for Davis. (*See id.* at 4, 7–8.) GEICO, of course, never

would have transferred the $5.91 million had it known that Davis intended to use the funds as his personal piggy bank. (*Id.* at 3.)

To hide that he had moved the funds and was spending it on his own expenses, Davis sought to lull and placate GEICO. (*Id.* at 3–4.) Davis falsely and fraudulently promised GEICO that he would be making the payments for the settlement and to stop the foreclosure proceedings, and that the PIS QOZ Fund bank account had the funds to do so. (*Id.* at 4.) He also falsely claimed that he had attempted to send funds to stop the foreclosure proceeding and that the wire transfer was stopped because of a "compliance review" on the PIS QOZ Fund bank account. (*Id.*) As GEICO sought more information about what happened to the money, Davis continued to lie to GEICO about the status of the funds. (*Id.* at 5.) Ultimately, Davis did not return any of the fraudulently obtained money. (*Id.*)

For this conduct, a grand jury returned an indictment charging Davis with 10 counts of wire fraud, in violation of 18 U.S.C. § 1343, and six counts of spending money laundering, in violation of 18 U.S.C. § 1957. (Doc. 1.) The indictment charges Davis with wire fraud for the wire of the funds from GEICO to the PIS QOZ Fund bank account (Count 1), Davis's wires of GEICO's funds from the PIS QOZ Fund bank account to other bank accounts he controlled at Cadence Bank and Southern First Bank, held in the name of Peachtree Investment Solutions, LLC (Counts 2 through 7), and telephone conversations related to the scheme to defraud (Counts 8 through 10). (*Id.* at 6–7.)

The spending money laundering counts cover six transactions from the Peachtree Investment Solutions bank accounts that Davis conducted with the fraudulently obtained GEICO funds (Counts 11 through 16). (*Id.* at 8.)

### B. Anticipated Testimony at Trial

The United States anticipates presenting testimony on the following transfers that Davis made of funds he fraudulently obtained from GEICO.

### 1. Payments to Victim H.C.

At trial, the United States expects that victim H.C. will testify that he gave Davis $2.15MM for investments in three different ventures, all unrelated to GEICO.[1] The investments did not work out and, despite

---

[1] Victim H.C. would likely testify that he believes that Davis defrauded him if questioned in detail about the investments. Victim H.C. would explain that, in at least one business venture, he later learned that the money he sent Davis was transferred by Davis and used for purposes other than what he believed the money would be used for (to purchase a property). Specifically, on or about December 5, 2019, and January 24, 2020, victim H.C., believing that his funds would be used to purchase a property, caused $250,000 and $750,000, respectively, to be transferred to a Cadence Bank account ending in 0055 controlled by Davis. All of that money was almost immediately transferred to another Cadence Bank account controlled by Davis, and Davis used the funds for other purposes. Victim H.C. would likely testify that he obtained the Cadence Bank records that show the transfers when he became involved in litigation with Davis. That litigation is now dismissed. The United States does not intend to elicit testimony on victim H.C.'s belief that he was defrauded or on the litigation. But if the door is opened through cross-examination, the

victim H.C.'s best efforts to collect, he was only able to obtain the return of approximately $644,925 from Davis. Bank records show that, of the funds that victim H.C. received from Davis, at least approximately $245,625 came from funds that Davis fraudulently obtained from GEICO through PIS QOZ Fund. Bank records would show that:

- On or about May 14, 2021, Davis wired $400,000 from the PIS QOZ Fund bank account to the Peachtree Investment Solutions, LLC account ending in 1782 at Southern First Bank (the "1782 Account").

- That same day, on or about May 14, 2021, Davis transferred $240,000 from the 1782 Account to the Blue Granite Freight, LLC account ending in 0208 at Southern First Bank (the "0208 Account").

- On or about May 17, 2021, Davis wired $200,000 from the 0208 Account to victim H.C.

- On or about May 26, 2021, Davis wired $960,000 from the PIS QOZ Fund bank account to the 1782 Account.

- On or about June 7, 2021, Davis wired $45,625 from the 1782 Account to victim H.C.

Victim H.C. is also expected to testify that, at least by February 2021, he conveyed to Davis that he might retain legal counsel due to issues with the investments. On February 1, 2021, victim H.C. told Davis via email he would be retaining an attorney to seek return of his funds. And, on May 1, 2021, victim H.C. told Davis via email that he

---

United States intends to question victim H.C. about these matters on redirect.

had engaged an attorney. Davis's transfers of fraudulently obtained GEICO money to victim H.C. were made shortly thereafter on May 17 and June 7, 2021.

### 2. Purchase of a 2021 Toyota Tundra at Jim Hudson Toyota

At trial, the United States expects that a witness from Jim Hudson Toyota in Irmo, South Carolina, will testify about Davis's purchase of a 2021 Toyota Tundra, priced at $43,511.50 (including the vehicle and service, hazard, and maintenance contracts). This purchase, bank records will show, came from fraudulently obtained GEICO money. As mentioned above, Davis wired $400,000 from the PIS QOZ Fund bank account to 1782 Account on or about May 14, 2021. That same day, he transferred $240,000 from that account to the 0208 Account. And a few days later, on or about May 19, 2021, Davis wrote a check to Jim Hudson Toyota for the amount of $43,511.50 drawn from the 0208 Account.

### Notice

The United States gives formal notice of its intent to offer at trial evidence related to the following: (i) victim H.C.'s transfer of $2.15MM to Davis for investments, (ii) the failure of the investments and Davis's return of some of the money that victim H.C. provided, (iii) victim H.C.'s communications regarding retaining an attorney to handle issues with the investments, (iv) Davis's use of fraudulently obtained GEICO funds to pay victim H.C. some of the money, approximately

$245,625, that Davis owed him, and (iv) Davis's use of fraudulently obtained GEICO funds to purchase a 2021 Toyota Tundra at Jim Hudson Toyota.

The United States may introduce this evidence through emails, business and bank documents, and witness testimony. With the exception of live testimony, the United States has produced these materials to Davis.

## Argument

### I. The Matters Described Above are Admissible as Intrinsic Evidence

Intrinsic evidence falls outside of Rule 404(b) and is "independently admissible." *United States v. Ford*, 784 F.3d 1386, 1393 (11th Cir. 2015). Evidence is intrinsic where it is "(1) an uncharged offense which arose out of the same transaction or series of transactions as the charged offense[s], (2) necessary to complete the story of the crime, or (3) inextricably intertwined with the evidence regarding the charged offense[s]." *Id.* (internal quotation marks omitted); *United States v. Muscatell*, 42 F.3d 627, 630–31 (11th Cir. 1995) (explaining that evidence of fraudulent transactions that involved "the same principal actors, in the same roles, employing the same modus operandi" was admissible as intrinsic evidence). "Other transactions connected with the offenses charged have long been used to show a general pattern, the necessary criminal intent, or the guilty knowledge of the defendant." *Id.* at 631 (internal quotation marks omitted); *see Ford*, 784 F.3d at 1394 (explaining that evidence of uncharged frauds by the defendant

7

that occurred "during the same time period, and using the same methods" was intrinsic); *United States v. Prophete*, 522 F. App'x 583, 586 (11th Cir. 2013) (explaining that district court did not commit plain error in admitting evidence of uncharged bank fraud that was "similar" and involved "one of the same co-conspirators"). Moreover, evidence is intrinsic when it "is linked in time and circumstances with the charged crime and concerns the context, motive or setup of the crime; or forms an integral part of the crime; or is necessary to complete the story of the crime." *United States v. US Infrastructure, Inc.*, 576 F.3d 1195, 1210 (11th Cir. 2009).

Here, the evidence is intrinsic because it is part of the same series of transactions charged in the indictment in Counts 11 through 16. Victim H.C. and Jim Hudson Toyota, like the individuals and entities listed in Counts 12, 14, 15, and 16, were paid by Davis from funds that he fraudulently obtained from GEICO. And while only Davis may know the reason he decided to purchase a car with GEICO's money, victim H.C. can explain why the debt to him was owed, and that, too, is intrinsic. The reason the debt was owed to victim H.C. is admissible as intrinsic because it completes the story of Davis's scheme for the jury, provides a motive for Davis's criminal acts, and it is inextricably intertwined with the charged offenses. The testimony explains why victim H.C. was owed money, how that debt was unrelated to PIS QOZ Fund and GEICO, and why Davis wanted to make sure victim H.C. received some money (victim H.C. was getting an attorney).

8

## II. In the Alternative, the Matters Described Above are Admissible Under Rule 404(b)

Though the evidence is intrinsic, in an abundance of caution, the United States provides notice of its intent to introduce this evidence under Rule 404(b) to prove motive, intent, plan, knowledge, identity, absence of mistake, and lack of accident.

Under Rule 404(b), evidence of another crime, wrong, or act is admissible to prove facts other than a person's character, including "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(1)–(2). Rule 404(b) is a rule of inclusion. *United States v. Jernigan*, 341 F.3d 1273, 1280 (11th Cir. 2003). Evidence is admissible under Rule 404(b) if (i) it is relevant to an issue other than the defendant's character, (ii) there is sufficient proof so that a jury could find that the defendant committed the act, and (iii) the evidence's probative value is not substantially outweighed by its undue prejudice. *See United States v. Miller*, 959 F.2d 1535, 1538 (11th Cir. 1992); *Jernigan*, 341 F.3d at 1280.

Under the Rule 404(b) test, the evidence described above is admissible at trial. First, by pleading not guilty, Davis has placed his intent at issue. *United States v. Colston*, 4 F.4th 1179, 1192 (11th Cir. 2021) (explaining that where the defendant "pleaded not guilty[,] . . . her intent was a material issue at the trial"); *United States v. Forehand*, 577 F. App'x 942, 945 (11th Cir. 2014) ("Proof of intent to defraud is necessary to support convictions for . . . wire fraud.")

9

(internal quotation marks omitted). That Davis used GEICO's funds to pay victim H.C. and purchase a 2021 Toyota Tundra shows that he intended to defraud GEICO into providing him the funds because he used the funds for himself. *United States v. Horn*, 129 F.4th 1275, 1287 (11th Cir. 2025) ("A jury may infer an intent to defraud from the defendant's conduct."); *see United States v. Santos*, 553 U.S. 507, 521 (2008) (observing that "knowledge must almost always be proved . . . by circumstantial evidence"). That Davis used the fraudulently obtained GEICO funds for these expenditures in a fashion similar to the charged transactions in Counts 12, 14, 15, and 16, around the same time as those transactions, also shows Davis's intent. *United States v. Ramirez*, 426 F.3d 1344, 1354 (11th Cir. 2005) ("A similarity between the other act and a charged offense will make the other offense highly probative with regard to a defendant's intent in the charged offense."). Davis's conduct also constitutes evidence of his plan here. Fed. R. Evid. 404(b).

Second, the evidence shows that Davis moved funds around with ease, wiring and transferring funds between numerous bank accounts, along with writing checks, without any issue. And that is evidence of knowledge, absence of mistake, and lack of accident. *United States v. Hooshmand*, 931 F.2d 725, 736 (11th Cir. 1991) (noting that extrinsic act evidence is "especially relevant" when government has to prove intent or to "show a defendant's ability and experience to execute a fraudulent scheme").

Third, the evidence is relevant to proving identity, because it shows that Davis was controlling the relevant bank accounts at the time of the charged fraud. Fed. R. Evid. 404(b) (evidence is admissible under Rule 404(b) to prove "identity"). Fourth, the evidence illustrates motive. Davis transferred fraudulently obtained GEICO money to victim H.C. after victim H.C. told Davis that he would be retaining legal counsel. This was because Davis was concerned that lawyers would investigate his actions and that risked exposing him. He made payments to victim H.C. to delay that from occurring. In sum, this evidence is highly probative of various issues other than Davis's character.

As to the other prongs necessary for admission of evidence under Rule 404(b), most of the United States' evidence is in the form of live testimony, emails, and business or bank records. That is sufficient evidence from which the jury could find that Davis participated in this conduct. *See United States v. Green*, 873 F.3d 846, 864 (11th Cir. 2017) ("The prosecutor can, of course, prove the prior act by calling witnesses to testify."). And the significant probative value of the evidence is not substantially outweighed by any prejudice—let alone undue prejudice—which in any event could be mitigated using a limiting

instruction. *See Ramirez*, 426 F.3d at 1354 (limiting instruction reduced the risk of undue prejudice from admission of a prior arrest).

Dated: May 9, 2025        Respectfully submitted,

                                  RICHARD S. MOULTRIE, JR.
                                    *Acting United States Attorney*

                                  /s/ Samir Kaushal
                                  SAMIR KAUSHAL
                                    *Assistant United States Attorney*
                                  Samir.Kaushal@usdoj.gov
                                  Georgia Bar No. 935285

                                  /s/ Cathelynn Tio
                                  CATHELYNN TIO
                                    *Assistant United States Attorney*
                                  Cathelynn.Tio@usdoj.gov
                                  Georgia Bar No. 814519