IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **United States of America**<br><br>*v.*<br><br>**Dwayne Peterson Davis** | Criminal Action No.<br><br>1:24-CR-257-JPB-JSA |

## United States' Sentencing Memorandum

The United States of America, by Theodore S. Hertzberg, United States Attorney, and Samir Kaushal, Assistant United States Attorney for the Northern District of Georgia, files this Sentencing Memorandum to address (i) the loss amount (and explain how the United States reached its sentencing recommendation)[1] and defendant Dwayne Peterson Davis's objections to the (ii) harm to a financial institution and (iii) abuse-of-trust enhancements. Pursuant to the plea agreement, the United States recommends that Davis receive 41 months' imprisonment to be followed by three years of supervised release.

## Argument

This is a simple case of fraud. Davis lied to a business partner, GEICO, to steal approximately $3.6 million from GEICO. The United States' recommendation of 41 months' imprisonment represents the low-end of the Custody Guideline Range when crediting Davis for every dollar of GEICO

---

[1] Davis withdrew his objection to the loss amount.

money that he legitimately spent. Davis's objections to the initial Presentence Investigation Report ("PSR"), which pertain to the harm to financial institution and abuse-of-trust enhancements, do not challenge the facts. Instead, they mistakenly apply the Guidelines to the facts and should be overruled.

**A. The loss amount exceeded $3.5 million.**

The loss amount here is $3,604,406.39. This amount is calculated by taking the total amount GEICO sent to the PIS QOZ Fund 2018-A LP (the "Partnership")[2] UBS bank account and subtracting the legitimate expenditures, tax payments and the Greenstone settlement, that occurred before discovery of the fraud (which, here, is pinned to August 30, 2021, when GEICO received a report on Davis's fraud).[3] *See* USSG § 2B1.1 comment. app. n.3(D) (discussing credits against loss). Thus, the calculation is as follows:

TOTAL AMOUNT TAKEN: $5,910,000[4]
TAX PAYMENTS (credit against loss): $2,074,593.61
GREENSTONE SETTLEMENT (credit against loss): $231,000

---

[2] The Partnership was a limited partnership between GEICO and Peachtree Investment Solutions, LLC ("PIS"). (PSR ¶ 15.)

[3] The PSR mistakenly does not count the Greenstone settlement payment as a credit against loss. It should count because it occurred on August 10, 2021, before the fraud was discovered. (PSR ¶ 35.)

[4] The PSR notes that, of the $5.91 million, $5.898 million was moved out of the Partnership's UBS account. (PSR ¶ 101.) Using $5.898 million as the total amount taken does not reduce the loss amount to below $3.5 million so it does not affect the Guidelines calculation.

2

LOSS AMOUNT: $3,604,406.39

After the fraud was discovered, in December 2021, a legitimate payment to a law firm was made, in the amount of $288,294.48, using GEICO money. This amount has been credited for restitution, reducing the restitution amount to $3,316,111.91.

In these unique circumstances, limited to this case—where the defendant spent funds on a legitimate business purpose that served the victim's interests after the scheme was discovered—and in light of the § 3553(a) factors that will be discussed at sentencing and the overall history of the case, the United States agreed to recommend a below-Guidelines sentence in the plea agreement. The sentencing recommendation amounts to the low-end of the Guidelines after reducing the total offense level by two levels.

**B. Davis should receive an enhancement under USSG § 2B1.1(b)(17)(A) because he derived more than $1,000,000 in gross receipts from GEICO.**

Davis objected to the application of USSG § 2B1.1(b)(17)(A), which calls for a two-level enhancement where "the defendant derived more than $1,000,000 in gross receipts from one or more financial institutions as a result of the offense[.]" *Id.* The objection should be overruled.

The Eleventh Circuit discussed this enhancement in *United States v. Muho*, 978 F.3d 1212 (11th Cir. 2020), albeit in the context of a bank. The *Muho* Court held that, "in a case involving property held by a financial institution for a depositor, the financial institution (1) must be the source of the property, which we interpret as having property rights in the property,

and (2) must have been victimized by the offense conduct." *Id.* at 1221 (upholding enhancement). In holding so, the *Muho* Court explained that "these two requirements follow straightforwardly from the Guideline's text—that the defendant's gross receipts be (1) 'derived . . . from' a financial institution (2) 'as a result of the offense.'" *Id.* at 1221–22. And although *Muho* deals with a different kind of financial institution, a bank, in discussing how a bank has a property interest in money deposited in the bank by a third-party depositor, *Muho* explained that "full ownership" of the property is not required for the enhancement to apply. *Id.* at 1222.

Here, through Davis's fraud, over $1 million of GEICO's funds "flowed directly or indirectly from the possession or control of [GEICO] to [Davis]." *Id.* at 1224. (*See* PSR ¶ 19; Doc. 39-1 at 10 (Davis agreeing to pay restitution of $3,316,111.91).) And no one disputes that GEICO was a financial institution under § 2B1.1(b)(17)(A). Thus, the enhancement applies.

Davis's narrow objection to the enhancement stems from Berkshire Hathaway's involvement. But Berkshire Hathaway's involvement, whatever it was, changes nothing. In *Muho*, the enhancement applied where the defendant tricked a victim bank into transferring money held by a victim accountholder at the victim bank to an account the defendant controlled. 978 F.3d at 1216. If Davis's view of Berkshire Hathaway's role here is correct, then it is, at worst, analogous to the victim accountholder in *Muho*. GEICO would be analogous to the victim bank. And the enhancement would still apply.

### C. Davis abused a position of trust and should receive a two-level enhancement under USSG § 3B1.3.

Davis objected to the abuse-of-trust enhancement. This objection should be overruled. "To justify an abuse-of-trust enhancement under U.S.S.G. § 3B1.3, the government must show the defendant: (1) held a position of public or private trust; and (2) abused that position in a way that significantly facilitated the commission or concealment of the offense." *United States v. Franklin*, No. 21-14358, 2022 U.S. App. LEXIS 28081, at *9–10 (11th Cir. Oct. 7, 2022) (citing *United States v. Morris*, 286 F.3d 1291, 1295 (11th Cir. 2002)).

Davis, as the managing principal at PIS (PSR ¶ 15), had unsupervised access to the Partnership's funds and the ability to move funds without notifying others. Davis "managed the operation of the [P]artnership[], which included, among other things, managing the underlying real estate developments and paying the [P]artnership's bills (such as property taxes)." (PSR ¶ 14.) Davis controlled the bank account that he used to commit the fraud, the Partnership's bank account at UBS. (*Id.* ¶ 19.) As such, Davis held a position of trust. Davis caused GEICO to fund the Partnership's bank account at UBS by, on April 20, 2021, sending GEICO an email stating that they were close to settling a legal matter with Greenstone and needed funding. (*See* April 20, 2021 email from Davis to GEICO, attached as Exhibit 1, at 1.) The email attached wiring instructions for the UBS account. (*Id.* at 5.) After GEICO sent funds to the Partnership's bank account at UBS, Davis misled GEICO and misrepresented what was being done with those funds.

5

(PSR ¶¶ 22–36.) While he told GEICO he still had the funds, in truth he was using it for his own purposes, such as paying off other, unrelated personal and business debts. (*E.g.*, *id.* ¶¶ 22–38.)

Davis's actions fall squarely into the realm of abusing a position of private trust. *See* USSG § 3B1.3 comment. app. n.1 ("This adjustment, for example, applies in the case of an embezzlement of a client's funds by an attorney serving as a guardian [or] a bank executive's fraudulent loan scheme[.]"); *e.g.*, *United States v. Ruballo*, 833 F. App'x 275, 280 (11th Cir. 2020) (finding no error where defendant, who was an executive director, had "considerable discretion to administer . . . funds, conduct a competitive bidding process . . . , and to conduct audits"); *United States v. Yount*, 960 F.2d 955, 956 (11th Cir. 1992) (summarily affirming application of abuse-of-trust enhancement where defendant was a bank "vice-president and trust officer" and misappropriated for his own use approximately $445,000 from trust accounts held by elderly persons).

Davis's own words confirm this conclusion. During his FBI interview, he explained his role in his scheme, including his significant autonomy and his control over what occurred with GEICO's money. (*See, e.g.*, PSR ¶¶ 83 (explaining that Davis worked with GEICO since 2012 and had done "fund management jobs"); 87 (stating that he "with various attorneys, worked to reach the settlement deal"); 89 ("Since UBS could not produce cashier's checks, Davis had to move the money to a PIS bank account at Cadence

6

Bank.").)

## Conclusion

Davis's objections to the PSR should be overruled and he should be sentenced to 41 months' imprisonment to be followed by three years of supervised release.

Respectfully submitted,

THEODORE S. HERTZBERG
   *United States Attorney*

/s/ Samir Kaushal
SAMIR KAUSHAL
   *Assistant United States Attorney*
Georgia Bar No. 935285
Samir.Kaushal@usdoj.gov
